IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00570-RBJ-SKC

ALPHONSO BLAKE, JR.

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

# ORDER

---

This matter is before the Court on the August 14, 2020 recommendation of Magistrate Judge S. Kato Crews, ECF No. 97.  The recommendation addresses four motions: defendant's motion to dismiss (ECF No. 65), defendant's motion for partial summary judgment (ECF No. 66), plaintiff's motion seeking additional time to file a certificate of review (ECF No. 69), and plaintiff's motion for a certificate of review (ECF No. 76).  Judge Crews recommends that I deny plaintiff's two motions, grant defendant's motion for partial summary judgment, and partially grant defendant's motion to dismiss.  ECF No. 97 at 2.  The recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

For the following reasons, I adopt the recommendation in part.  I GRANT defendant's motion for partial summary judgment (ECF No. 66), and I GRANT in part and DENY in part defendant's motion to dismiss (ECF No. 65).  I also GRANT plaintiff's motion seeking

additional time to file a certificate of review (ECF No. 69) and DENY plaintiff's motion for a certificate of review (ECF No. 76).

## I. FACTUAL BACKGROUND

Judge Crews summarized the background of this case in his recommendation. ECF No. 97 at 1–2. I include his summary with some additional facts. Plaintiff Alphonso Blake Jr. is a prisoner in the custody of the Federal Bureau of Prisons ("BOP") who was previously housed at the United States Penitentiary Administrative Maximum facility ("ADX"). Plaintiff is proceeding pro se and brings claims under the Federal Tort Claims Act ("FTCA"). Defendant is the United States of America.

Plaintiff alleges in his second amended complaint that he has been diagnosed with borderline personality disorder, unspecified mood disorder, and anxiety disorder. ECF No. 64 at 7 ¶3. He has been prescribed several different antipsychotic medications to treat these disorders, some of them at "very high doses." *Id.* According to plaintiff, despite knowing of his diagnoses the BOP failed to provide him with appropriate medical treatment and deprived him of his medications. *Id.* at 3–4, 7–8. He contends the BOP intentionally inflicted emotional distress on him when it placed him at ADX despite policies to the contrary; discontinued his medications; took him off suicide watch; and subjected him to "use of force" and harmful disciplinary procedures. *Id.* at 9–10. Plaintiff also claims the BOP retaliated against him for exercising his First Amendment rights through the prison grievance system and the courts. *Id.* at 21–25.

Prior to this lawsuit, plaintiff filed six administrative tort claims with the BOP. ECF No. 66-1. Though they were included as an exhibit to defendant's motion for summary judgment and not plaintiff's second amended complaint, they form the basis for some of Judge Crews'

recommendations.  As a result, I summarizes them here.

Plaintiff submitted his first administrative tort claim (TRT-NCR-2016-01410  or "2016-1") on November 12, 2015, alleging he was taken off medication in retaliation for exercising his First Amendment rights.  The BOP denied that claim on April 7, 2016, and plaintiff's deadline to file suit over those allegations was October 7, 2016.  ECF No. 66-1 at 9–10, 15.  Plaintiff submitted the second of these claims (TRT-NCR-2016-02290 or "2016-2") on January 27, 2016, alleging BOP psychiatrists prescribed him high doses of medication despite his risk for seizures.  The BOP denied that claim on August 18, 2016, making plaintiff's deadline to file suit February 18, 2017.  *Id.* at 17–18, 27.  Plaintiff filed the third claim (TRT-NCR-2016-04882 or "2016-3") on June 10, 2016.  It alleged the BOP placed him in unsanitary conditions, discontinued his medications, and took him off suicide watch despite plaintiff's still having razor blades in his stomach.  BOP denied the claim on September 27, 2016, and plaintiff's deadline for filing suit was March 27, 2017.  *Id.* at 29–34, 39.  Plaintiff filed his fourth administrative tort claim (TRT-NCR-2016-05819 or "2016-4") on August 9, 2016.  He alleged that his placement at ADX was contrary to BOP policies, and that BOP had manipulated his mental health records to keep him at ADX.  The BOP denied the claim on November 8, 2016, which made May 8, 2017 plaintiff's deadline to file suit.  *Id.* at 41–49, 53.

On November 27, 2017 plaintiff filed a fifth administrative tort claim (TRT-NCR-2018-01708 or "2018-1").  That claim alleged the BOP failed to provide him with proper mental health care and subjected him to unnecessary uses of force and discipline.  On January 24, 2018 the BOP denied that claim.  Plaintiff's deadline to file suit on those allegations was July 24, 2018.  *Id.* at 55–59, 63.  Judge Crews and defendant both refer to this claim as the "Timely Tort"

because plaintiff, pursuant to FTCA requirements, filed suit within six months of receiving the

BOP's decision.  ECF No. 97 at 4; ECF No. 100 at 5.  Finally, plaintiff filed a sixth claim (TRT-

NCR-2019-01539 or "2019-1") on November 29, 2018 that alleged defendant retaliated against

him for exercising his First Amendment rights and subjected him to cruel and unusual

punishment for exercising his right to seek mental health treatment.  That claim was denied by

the BOP on February 22, 2019, making August 22, 2019 the deadline for plaintiff to file suit.

ECF No. 66-1 at 65–68, 72.

## II. PROCEDURAL BACKGROUND

Judge Crews also summarized the procedural history of this case in his recommendation.

ECF No. 97 at 2–3.  I again include his summary with some additional facts.  On March 8, 2018

plaintiff filed this action against the United States of America under the FTCA.  ECF No. 1.  He

filed his first amended complaint on May 29, 2018.  ECF No. 14.  Due to an administrative

oversight, a U.S. Marshal did not serve the amended complaint on defendant until June 13, 2019.

ECF No. 41.

On July 5, 2019 plaintiff sought to further amend his amended complaint to add a

retaliation claim based on events that occurred in 2018, i.e. after he initially filed this case.  ECF

No. 48.  Defendant opposed the amendment, arguing that plaintiff failed to exhaust his

administrative remedies concerning the 2018 retaliation prior to bringing this action.  ECF No.

51.  Defendant also moved to dismiss plaintiff's complaint on August 12, 2019.  ECF No. 52.

That same day defendant filed a motion for partial summary judgment.  ECF No. 53.  On August

26, 2019 plaintiff filed a response to defendant's motion for partial summary judgment as well as

a motion to appoint counsel.  ECF Nos. 55, 56.  Defendant responded to plaintiff's motion to

appoint counsel and replied to plaintiff's response to its motion for partial summary judgment on September 10, 2019.  ECF Nos. 58, 59.

On October 10, 2019 the court allowed plaintiff's further amendment, finding that defendant's arguments regarding exhaustion in ECF No. 56 were more efficiently addressed in a summary judgment motion.  ECF No. 61.  Also on October 10, Judge Crews granted plaintiff's motion to appoint counsel.  ECF No. 62.  However, it does not appear from the docket that the court ever found or appointed a volunteer lawyer for plaintiff.

The court docketed plaintiff's second amended complaint on October 10, 2019.  ECF No. 64.  In his second amended complaint plaintiff brings three claims for relief under the FTCA: (1) negligence; (2) intentional infliction of emotional distress ("IIED"); and (3) First Amendment retaliation.  *Id.* at 7–25.  As characterized by defendant, the negligence and IIED claims contain both "treatment-related" and "placement-related" sub-claims.  ECF No. 65 at 4.

Defendant filed a revised motion to dismiss and motion for partial summary judgment on October 24, 2019.  ECF Nos. 65, 66.  Plaintiff filed a motion for additional time to file a certificate of review on December 6, 2019.  ECF No. 69.  Defendant responded on December 16, 2019, and plaintiff replied on January 6, 2020.  ECF Nos. 72, 75.  On January 6, 2020 plaintiff filed a motion for a certificate of review.  ECF No. 76.  That same day plaintiff also responded to defendant's revised motion for partial summary judgment.  ECF No. 77.  Defendant replied on January 21, 2020.  ECF No. 79.  Two days later defendant responded to plaintiff's motion for a certificate of review.  ECF No. 80.

Judge Crews issued a recommendation on ECF Nos. 65, 66, 69, and 76 on August 14, 2020.  ECF No. 97.  Defendant filed its objections on August 28, 2020.  ECF No. 100.  The

Court granted plaintiff two extensions of time to file objections with a final deadline of October 30, 2020.  ECF Nos. 102, 105.  Plaintiff did not file timely objections by the deadline.

### III. STANDARDS OF REVIEW

**A.  <u>Magistrate Judge recommendation</u>**

When a magistrate judge makes a recommendation on a dispositive motion, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  FED. R. CIV. P. 72(b)(3).  An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *see also* FED. R. CIV. P. 72(b) Advisory Committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").  Legal theories raised for the first time in objections to a magistrate judge's recommendation are deemed waived.  *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

**B.  <u>Motion to dismiss</u>**

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While courts must accept well-pled allegations as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory statements are not entitled to this presumption.  *Iqbal*, 556 U.S. at 678, 681.

So long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah St. Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

### C.  **Motion for summary judgment**

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences in the light most

favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### D. Pro se litigants

Mr. Blake is proceeding pro se. When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

### IV. ANALYSIS

#### A. Recommendations to which there are no objections

##### 1. Defendant's motion for partial summary judgment as to administrative tort claims 2016-1, 2016-2, 2016-3, and 2016-4

On defendant's motion for partial summary judgment (ECF No. 66) Judge Crews recommended granting dismissal of plaintiff's claims for negligence and IIED to the extent they are based on actions also alleged in his first four administrative tort claims (2016-1, 2016-2, 2016-3, 2016-4). He agreed with defendant that those claims were untimely because plaintiff failed to file suit within six months of a final decision from the agency (in this case the BOP). Judge Crews also concluded that equitable tolling did not apply. ECF No. 97 at 3–8.

Neither party objected to this recommendation.  The Court has reviewed these findings and finds no clear error.  The Court thus accepts and adopts this recommendation.  Defendant's motion for partial summary judgment is GRANTED with respect to the allegations reflected in plaintiff's administrative tort claims 2016-1, 2016-2, 2016-3, 2016-4.  More specifically, the Court DISMISSES plaintiff's claims for negligence and IIED to the extent they are based on allegations of the BOP placing plaintiff at ADX contrary to policy (ECF No. 64 at 9 ¶¶1–3), manipulating his mental health records to continue his ADX placement (*Id.* at 7 ¶2), and taking him off of suicide watch despite his having razor blades in his stomach (*Id.* at 10 ¶8).

  2. Defendant's motion for partial summary judgment as to administrative tort claim 2019-1

Judge Crews addressed plaintiff's retaliation claim separately in his recommendations. *See* ECF No. 100 at 15–18.  Defendant argued in its motion to dismiss that the retaliation claim should be dismissed for failure to state a claim.  ECF No. 65 at 12–14.  Defendant also noted that many of the events underlying the retaliation claim occurred after plaintiff filed his first complaint in March 2018.  ECF No. 66 at 11.  Defendant urged the court to conclude that plaintiff's claim must be dismissed for lack of subject matter jurisdiction because it was not— and indeed could not have been—exhausted by the time he filed suit.  *Id.* at 12.  Plaintiff, however, argued in a motion to supplement that his retaliation claim could "relate back" to his original complaint filing.  ECF No. 48 at 3–4.

Judge Crews found the court lacked subject matter jurisdiction on a different basis.  He rejected defendant's argument that plaintiff had not exhausted his retaliation claim.  ECF No. 100 at 16 n.11.  Judge Crews correctly concluded that defendant has not waived its sovereign

immunity under the FTCA for constitutional tort claims such as this retaliation claim. *Id.* at 18

(citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994)). Further, Judge Crews found that even if

plaintiff had brought this claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

*Narcotics*, 403 U.S. 388 (1971), sovereign immunity would still bar the claim as against the

United States. Judge Crews thus recommended dismissing plaintiff's retaliation claim without

prejudice.

Neither party filed objections to this recommendation. In my review of the

recommendation I found no clear error. I thus adopt and accept Judge Crews' recommendation

on this claim. The Court DISMISSES plaintiff's retaliation claim without prejudice.

### 3. Defendant's motion to dismiss as to punitive damages, injunctive relief, and declaratory judgment

Judge Crews recommended granting in part and denying in part defendant's motion to

dismiss (ECF No. 65). Judge Crews also recommended dismissing plaintiff's request for

punitive damages, injunctive relief, and declaratory judgment on the basis that such forms of

relief are not available under the FTCA. *Id.* at 18–19. There were no objections to these

recommendations. The Court thus accepts and adopts these recommendations. Plaintiff's

requests for punitive damages, injunctive relief, and declaratory judgment are DISMISSED

without prejudice for lack of subject matter jurisdiction.

### 4. Plaintiff's motion for additional time to file a certificate of review and defendant's motion to dismiss as to the negligence claim

Judge Crews recommended granting defendant's motion to dismiss as to plaintiff's

negligence claim because plaintiff failed to file a certificate of review. ECF No. 97 at 14. Judge

Crews also recommended denying plaintiff's motion for additional time to file a certificate of review (ECF No. 69).  Because the issues presented by the relevant parts of these two motions are related, I address them together here.  I note for clarity that some of the allegations underlying plaintiff's negligence claim do not survive due to untimeliness (see Part IV.A.1). Thus, I only analyze plaintiff's allegations that defendant discontinued or failed to provide plaintiff's medications.  ECF No. 64 at 8 ¶5.

Under the FTCA, determining whether a defendant is substantively liable requires analyzing the law of the jurisdiction in which the alleged negligence or wrongful act occurred. *Meyer*, 510 U.S. at 478.  The wrongful acts plaintiff alleges occurred at a federal prison in Colorado.  Under Colorado law a plaintiff seeking damages based on allegations of professional negligence must file a "certificate of review" by a professional in the relevant field:

> In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional . . . within sixty days after the service of the complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.

COLO. REV. STAT. § 13-20-602(1)(a).  The sixty days begin to run from the date the complaint first raising the predicate claim is served on the defendant.  *See e.g. Karara v. Czopek*, 89 F.3d 850, 1996 WL 330260, at *1 (10th Cir. 1996).

The certificate of review is a technical requirement.  It is not jurisdictional but an affirmative defense that can be waived only by the defendant.  *Miller v. Rowtech, LLC*, 3 P.3d 492, 494-95 (Colo. App. 2000).  Certificates of review are required "only if (1) the plaintiff brings a claim of alleged professional negligence against a licensed professional, *and* (2) expert testimony is necessary to substantiate the claim."  *Sherman v. Klenke*, 653 F. App'x 580, 595

(10th Cir. 2016) (citing COLO. REV. STAT. § 13-20-602(4)) (emphasis in original).  This requirement applies to professional negligence claims brought under the FTCA against the United States, including failure to provide medical treatment.  *Coleman v. United States*, 803 F. App'x 209, 212 (10th Cir. 2020) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004)).

Judge Crews agreed with defendant that the certificate of review requirement applied to plaintiff's negligence claim, and that plaintiff failed to file one.  ECF No. 97 at 11–12.  He concluded that expert testimony was required because plaintiff's claim "alleges a legal duty to properly administer, document, and review medical notes concerning his medication regime." *Id.*  Because this claim involves duties owed to plaintiff concerning his psychiatric disorder treatment, Judge Crews reasoned, it involves the type of medical care or standard that requires expert testimony.  *Williams v. Boyle*, 72 P.3d 392, 397 (Colo. App. 2003); *Armbruster v. Edgar*, 731 P.2d 757 (Colo. App. 1986); *Smith v. Curran*, 472 P.2d 769, 770–71 (1970).

Defendant was served with plaintiff's first amended complaint on June 12, 2019, so plaintiff's deadline for filing a certificate of review was August 12, 2019.  Judge Crews noted it was undisputed that plaintiff failed to file a certificate of review for this negligence claim.  ECF No. 97 at 12–13.  I agree with Judge Crews' analysis and find no clear error on this point.

The next issue is whether plaintiff's failure to file a certificate of review can be excused for good cause.  Judge Crews noted plaintiff's arguments that various prison conditions prevented him from obtaining and filing a timely certificate of review.  These included an institution-wide lockdown between July 3 and October 30, 2019, limited access to the prison's law library, confiscation of his property, falsely filed incident reports against him, and an

12

administrative transfer.  ECF No. 69 at 13.  Judge Crews agreed with defendant that plaintiff

failed to provide specific dates for some of these incidents, and that the two allegedly "bogus"

incident reports occurred *after* plaintiff's deadline.  *Id.*  He also noted that plaintiff provided no

details on how the lockdown restrictions impacted his ability to file.  Finally, Judge Crews

pointed to plaintiff's filing of other documents with the Court during the period prior to the

certificate deadline.  *Id.* at 13–14.

      I disagree that plaintiff has failed to show good cause.  As Judge Crews notes, defendant

first raised the issue of plaintiff's failure to file a certificate of review on August 12, 2019—the

exact deadline by which plaintiff needed to file.  ECF No. 97 at 12.  Based on plaintiff's prior

filings this Court finds it highly improbable that plaintiff knew he was required to file a

certificate of review prior to defendant's motion.  Without such knowledge it would have been

impossible for plaintiff to meet the filing deadline.

      Even assuming plaintiff did understand or should have known about this requirement

prior to the deadline, he provided multiple plausible reasons why he could not file.  Though

Judge Crews is correct that plaintiff did not respond to defendant's motion to dismiss or

immediately seek an extension of his deadline to file the certificate of review, plaintiff *did*

address the issue.  On August 19, 2019 plaintiff filed a response to defendant's motion for partial

summary judgment and a motion to appoint counsel.  ECF Nos. 55, 56.  In the latter document

plaintiff explicitly mentioned the "deficiency" of failing to file a certificate of review as a reason

for which he was requesting appointment of counsel.  ECF No. 56 at 1.  He stated that he was

being denied access to the law library, his legal documents were being discarded, his legal mail

was not being mailed, and his personal property was being confiscated, which prevented him

from writing.  ECF No. 55 at 2.

With respect to the lockdown, plaintiff specified in his reply to defendant's response that he was denied law library access from July 3, 2019 through October 30, 2019, i.e. the exact dates of the lockdown.  ECF No. 75 at 1.  It is reasonable to infer that plaintiff wanted access to the law library in order to understand the requirements of a certificate of review, and how to obtain one, or to rebut defendant's argument that one was needed at all.  I therefore disagree that plaintiff failed to provide details on what restrictions were implemented during the lockdown or how the lockdown prevented him from filing a certificate of review.  ECF No. 97 at 13–14.

The fact that plaintiff prepared and filed other documents with the Court is inapposite to whether he had the ability to file a certificate of review.  A proper certificate requires retaining an expert who has expertise in the area of alleged negligence and in this case is actually a licensed physician.  COLO. REV. STAT. §§ 13-20-602(3)(a)(I), 13-64-401.  That expert must review "the known facts" related to the claim including records, documents, and other materials deemed relevant—a requirement which would necessitate plaintiff procuring relevant evidence from the BOP and sending it to the retained expert.  COLO. REV. STAT. § 13-20-602(3)(a)(II). The documents plaintiff filed in the period preceding the certificate deadline largely just required plaintiff to have access to pen, paper, and prior filings.  Finding an expert, providing her with relevant evidence, and convincing her to prepare a certificate of review is more complex, more involved, and requires engagement with a party external to the prison.  Plaintiff's conditions of confinement and the additional limitations he has mentioned are thus likely to be much more prohibitive for a certificate of review than for his regular filings.

Finally, defendant notes that plaintiff has had plenty of time since its motion to dismiss to

file a certificate of review.  As just discussed, however, obtaining such a certificate is likely to be particularly arduous for a prisoner.  Further, defendant would have undoubtedly asked this court to disregard the certificate for being untimely.  It would not have been rational for plaintiff to retain an expert and file such a certificate after the deadline without this Court's leave to do so.

I find that plaintiff has shown good cause for failing to file a certificate of review on his negligence claim.  I therefore do not adopt or follow Judge Crews' recommendation on this point.  I GRANT plaintiff's motion for additional time to file a certificate of review (ECF No. 69).  Plaintiff has sixty days from the date of this order to obtain and file a certificate of review for the surviving allegations under his negligence claim.  No additional time extension will be granted by this Court for the filing of this certificate.

### 5. Plaintiff's motion for certificate of review

In addition to his motion for additional time, plaintiff filed a motion for a certificate of review.  ECF No. 76.  Judge Crews interpreted this as plaintiff asking this Court itself to issue the certificate of review plaintiff needs.  I agree with Judge Crews that the plain language of the statute is clear: this Court cannot issue a certificate of review, only an expert in the area of alleged negligence can do so.  Judge Crews recommended denying plaintiff's motion.  Neither party filed objections.  The Court thus accepts and adopts that recommendation.  Plaintiff's motion for a certificate of review (ECF No. 76) is DENIED.

### B. **Defendant's first objection: Denial of motion to dismiss on plaintiff's IIED claim**

Defendant filed two objections in this case.  Defendant's first objection is limited to Judge Crews' recommendation that plaintiff "be permitted to proceed on the IIED claim insofar as it involves allegations from the Timely Tort."  ECF No. 97 at 15; ECF No. 100 at 7.

Defendant makes two arguments in support of its position that plaintiff's IIED claim should be dismissed. First, defendant argues that the IIED allegations are untimely or unexhausted. ECF No. 100 at 7. Second, defendant argues that this claim is actually a negligence claim in substance and thus fails based on plaintiff's failure to file a certificate of review. *Id.* at 9. I address each argument in turn, reviewing Judge Crews' findings de novo. FED. R. CIV. P. 72(b)(3). For the reasons discussed below I OVERRULE defendant's first objection.

### 1. Whether plaintiff's IIED allegations are untimely or unexhausted

Judge Crews recommended that plaintiff be permitted to proceed on his IIED claim to the extent it involves allegations from the "Timely Tort" (2018-1). ECF No. 97 at 15. He recommended denying defendant's motion to dismiss on this part of plaintiff's claim.

In response defendant argues that paragraphs 1–9 of the IIED claim in the second amended complaint were raised in his first, third, and fourth administrative tort claims (2016-1, 2016-3, and 2016-4). Because plaintiff failed to timely file suit after the BOP denied those claims, defendant asserts, any allegations reflected in those claims are untimely and thus cannot go forward. Defendant also asserts that plaintiff's last allegation regarding the April 14, 2017 use of force incident was not alleged in any of his admin tort claims and is thus administratively unexhausted. ECF No. 100 at 7.

Upon reviewing the second amended complaint, I find two sets of allegations reflected in the "Timely Tort" that could go forward under plaintiff's IIED claim. The first is defendant's alleged discontinuation of plaintiff's medications. ECF No. 64 at 10 ¶6. The second is an alleged use of force against plaintiff on April 14, 2017 in which correctional officers sprayed plaintiff with gas, put him in restraints, and kept him in an isolation unit for three days. *Id.* at 10

¶9.  I address each in turn.

In his recommendation Judge Crews addressed only the first subset of allegations—the discontinuation of plaintiff's antipsychotic medication.  In ruling on the IIED claim he focused on plaintiff's allegation that defendant "intentionally deprived Plaintiff of his antipsychotic medications to further contribute to his mental health conditions and cause him physical and emotional distress."  *Id.* at 14.  Defendant asserts that plaintiff did not raise the alleged discontinuation of plaintiff's antipsychotic medications in his Timely Tort.  ECF No. 100 at 8.  Instead, defendant contends, plaintiff raised his allegations of discontinuation of medication in his first and third administrative tort Claims (2016-1 and 2016-3).  *Id.*  If that is the case, then plaintiff did not timely file suit on these allegations and they cannot proceed.

This Court is not persuaded by defendant's argument.  The Timely Tort does reflect the allegations about medications that plaintiff raises in his second amended complaint.  The language of that administrative tort claim refers to plaintiff's failure to receive proper medical treatment.  Purposeful discontinuation of plaintiff's required medications falls within the ambit of a failure to provide adequate treatment for plaintiff's mental illness.

Defendant's argument rests on the assumption—which it concludes without much explanation—that the alleged instances of discontinuation in plaintiff's second amended complaint must be the same as those in the first and third administrative tort claims (2016-1, 2016-3).  This is not necessarily the case.  Plaintiff reports being placed on a wide variety of anti-psychotic medications, including Sinequon, Prozac, Rispirdon, Wellbutrin, Abilify, Ziprasidon, and Cogentin.  ECF No. 64 at 7 ¶3.  He references being taken off medications on many occasions as part of an ongoing denial of mental health treatment that he contends continues

through his second amended complaint.  *See e.g.* ECF No. 64 at 3 ¶8, 10 ¶6; ECF No. 1 at 3 ¶8;

ECF No. 5 at 7 ¶5; ECF No. 14 at 4 ¶12 (alleging that while he was on Rispirdone he was still

not receiving all proper medication).  It is equally reasonable to assume that plaintiff's references

to medication discontinuations in 2017—more than a year after the first and third administrative

tort claims—encompass different incidents.  I agree with Judge Crews that this part of plaintiff's

IIED claim should proceed.

Judge Crews does not appear to address the second subset of allegations—the alleged use

of force and isolation on April 14, 2017—in his recommendation.  Defendant argues that

plaintiff never raised this allegation in any of his administrative tort claims, and that he thus

failed to exhaust it.  ECF No. 100 at 9.  I disagree.  In his "Timely Tort" plaintiff explicitly refers

to "unnecessary uses of force."  ECF No. 66-1 at 58.  A review of plaintiff's administrative tort

claims and other filings reveals that he never alleged a use of force incident prior to the April 14,

2017 incident.  *See e.g.* ECF No. 66-1; ECF Nos. 1, 5, 9, 14, 23, 26, 28, 29, 48, 55, 60, and 64.

The Timely Tort was filed in November 2017, a few months after the alleged use of force

incident and almost a year prior to plaintiff's use of force allegations from 2018 and 2019.  *See*

*e.g.* ECF No. 31.  It stands to reason that the "uses of force" referenced in that administrative tort

claim encompassed the April 2017 use of force and placement in isolation that plaintiff alleges in

his second amended claim.  I thus reject defendant's contention that plaintiff failed to exhaust

administrative remedies as to the excessive force allegation.

## 2. Whether plaintiff's IIED claim requires filing a certificate of review

Defendant next objects to plaintiff's IIED claim on the basis that it required a certificate

of review.  As discussed above, a plaintiff must file a certificate of review in a negligence claim

where expert testimony is required to establish a prima facie case of negligence.  COLO. REV.
STAT. § 13-20-602(1)(a).  Judge Crews concluded that though a certificate of review "applies to
all claims 'based upon' alleged professional negligence [and not] only to 'negligence claims,'"
*Martinez v. Badis*, 842 P.2d 245, 251 (Colo.1992), an IIED claim does not fall under the
umbrella of claims requiring the certificate.  ECF No. 97 at 14.  Judge Crews reasoned that
negligence is inapposite to IIED claims because IIED claims are *intentional* and thus do not
require proof of professional negligence.  *Id.* (citing *Martinez*, 842 P.2d at 251; *Clifton v.
Eubank*, No. 00-cv-02555-JLK, 2006 WL 3746694, at *9 (D. Colo. Dec. 18, 2006).

To support its objection defendant argues that plaintiff's IIED claim is actually not an
IIED claim at all—it is a negligence claim.  Defendant rightly notes that courts must determine
the nature of a claim by its substance, not its label.  *Johnson v. Dep't of Veterans Affairs*, 351 F.
App'x 288, 290 (10th Cir. 2009) (citing *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir.
1996)).  Defendant points to the Timely Tort's general language that defendant was "negligent in
giving [him] proper mental health treatment."  ECF No. 66-1 at 56; ECF No. 100 at 10.
Defendant also focuses on the Timely Tort's mention of prior litigation in which plaintiff sought
damages based on "negligent factors" of improper treatment of mentally ill inmates.  ECF No.
100 at 10.  Defendant argues that the language of plaintiff's allegations sound in professional
negligence, and therefore this claim requires filing a certificate of review under COLO. REV.
STAT. § 13-20-602.  I do not agree.

The Court must consider the Timely Tort to the extent it is relevant to the administrative
exhaustion or timeliness of plaintiff's claims—an analysis I have already done above in Part
IV.B.1.  The Court's role here is to determine if plaintiff has pled sufficient facts for his IIED

claim to overcome a motion to dismiss.  That analysis must focus on the allegations in plaintiff's second amended complaint, not in the Timely Tort.  Defendant impliedly asks the Court to do the opposite.  That approach, however, would effectively negate the need for FTCA plaintiffs to file complaints in federal suits at all, much less seek leave to amend them.  I find that plaintiff has sufficiently alleged an IIED claim in his second amended complaint.

To establish an IIED claim a plaintiff must demonstrate that (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the plaintiff suffered severe emotional distress which was caused by the defendant's conduct.  *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (citations omitted).  Conduct that meets the first element "goes 'beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'"  *Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (1970)).  "The outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity."  *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982) (citation omitted).  "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question."  *Culpepper*, 877 P.2d at 883 (citations omitted).

Plaintiff pleads sufficient facts in his second amended complaint to overcome a motion to dismiss on his IIED claim as to discontinuation of his medications.  He alleges that BOP staff discontinued his medications in order to minimize the appearance of his mental illness and in

order to continue housing him at ADX Florence. ECF No. 64 at 10. He also alleges defendant

took these actions in order to cause plaintiff physical and emotional distress. *Id.* He reports

mental breakdowns and "mental episodes" partly as a result of discontinuation of his medication.

*Id.* Construing his pleadings liberally, plaintiff contends that defendant knew of plaintiff's

mental health diagnosis, was aware plaintiff needed to be on antipsychotics, and intentionally

prevented him from taking necessary medications in order to cause him distress and to downplay

his mental illness. *Id.* at 3, 10. Plaintiff also alleges severe emotional distress in the form of

mental-illness-induced breakdowns that went uncontrolled due to defendant's alleged failure to

properly medicate him. *Id.* at 7, 10.

On the extreme and outrageous conduct element, defendant claims that "[a]ny surviving

allegations based on the Timely Tort do not involve any specific conduct that could plausibly be

regarded" to fit that standard. ECF No. 100 at 12. Again, I disagree. Plaintiff is alleging that

defendant discontinued his medications not because of informed, patient-centered medical

judgment, but to manipulate how his mental health impacted his status at ADX and to cause him

to suffer. Courts applying Colorado law have considered refusal to render necessary medical

care outrageous. *See e.g. Romero v. DR or NP Travis*, No. 18-CV-02575-RM-NRN, 2019 WL

8750268, at *7 (D. Colo. Sept. 16, 2019), *report and recommendation adopted sub nom. Romero*

*v. Travis*, No. 1:18-CV-02575-RM-NRN, 2020 WL 1130071 (D. Colo. Mar. 9, 2020); *DeCicco*

*v. Trinidad Area Health Ass'n*, 573 P.2d 559, 562 (Colo. App. 1977). Purposefully stopping a

patient's medical treatment for non-medical reasons—and in fact against a patient's medical

interests—could be considered "atrocious" and "intolerable" by a jury. *Riske*, 366 F.3d at 1089.

Plaintiff also pleads sufficient facts to overcome a motion to dismiss on his IIED claim as

21

to the alleged use of force and isolation on April 14, 2017.  He alleges that correctional officers gassed him, physically restrained him, and then isolated in a remote cell for three days.  ECF No. 64 at 10 ¶9.  There is no indication in the second amended complaint that plaintiff's own behavior prompted the use of force and isolation—in fact, it is unclear why force was used at all. Plaintiff's allegations, if true, amount to BOP staff intentionally assaulting him multiple times and placing him in unwarranted segregation.  This court has held that assault can constitute sufficiently outrageous or extreme conduct to underpin an IIED claim.  *See e.g. Rhoden v. City of Lakewood, Colo.*, No. 11-CV-01734-PAB-BNB, 2013 WL 878680, at *8 (D. Colo. Mar. 8, 2013), *order clarified sub nom. Rhoden v. O'Hayre*, No. 11-CV-01734-PAB-BNB, 2013 WL 1442584 (D. Colo. Apr. 9, 2013).  A jury could consider outrageous the conduct that plaintiff was subjected to here.

On a motion to dismiss the Court is obliged to take plaintiff's allegations as true.  The Court is also obliged to construe plaintiff's pleadings liberally based on his pro se status.  This of course does not guarantee that plaintiff will ultimately prevail on his IIED claim.  Defendant will have the opportunity to produce evidence to rebut plaintiff's allegations.  But that opportunity will present itself during discovery and in a subsequent motion for summary judgment, not here. Though it is a close call, at this stage the balance tips in favor of permitting plaintiff's claim to progress.  The Court thus DENIES defendant's motion to dismiss plaintiff's IIED claim as to allegations that (1) defendant discontinued or denied him his medications and (2) defendant used force against him on April 14, 2017 and placed him in an isolation unit for three days.

**C. Defendant's second objection: Placement claims are barred by the discretionary function exception**

Defendant's second objection is that Judge Crews failed to address defendant's argument that placement-related claims fall under the FTCA's discretionary function exception.  ECF No. 100 at 12.  Judge Crews recommended these placement claims be dismissed because they were raised in the four administrative tort claims after which plaintiff failed to timely file suit.  ECF No. 97 at 8; *see also* ECF No. 66-1.  Defendant contends that instead of dismissing these claims for being untimely under the FTCA, Judge Crews should have dismissed them for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1).  *Id.*

Defendant is correct that in order to reach the issue of timeliness under the FTCA, a court must first have subject matter jurisdiction.  *Garling v. United States Envt'l. Prot. Agency*, 849 F.3d 1289, 1293 (10th Cir. 2017).  Under the FTCA's discretionary function exception, the United States' immunity is not waived for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  To determine if agency conduct falls under the exception, courts determine first whether the conduct was discretionary and second whether it required an exercise of judgment based on public policy considerations.  *Garling*, 849 F.3d at 1295 (citations omitted).

The Tenth Circuit has stated that

'. . . .in a number of cases involving the discretionary function exception to the FTCA, [] the determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues. . . . Accordingly, [such a] case should [be] decided on summary judgment rather than as a 12(b)(1) motion

23

to dismiss.'

*Clark v. United States,* 695 F. App'x 378, 382 n.2 (10th Cir. 2017) (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)) (internal citations omitted).  However, a court may appropriately decide on the discretionary function exception at the motion to dismiss stage "where specific factual disputes identified by plaintiffs [are] immaterial to applicability of discretionary function exception, and where, even drawing all inferences in plaintiffs' favor, [the] discretionary function exception applie[s]."  *Id.* (citing *Lopez v. United States*, 376 F.3d 1055, 1061 (10th Cir. 2004)).

Defendant cites to various cases from other circuits and this court to support its position that plaintiff's placement at ADX Florence falls squarely within the discretionary function exception.  Upon review of these cases I do not agree that defendant's conclusion is inevitable.

Defendant points to three decisions from this court applying the discretionary function exception in a prison context.  *Brown* involved an inmate's placement in psychological treatment in a Special Management Unit ("SMU").  Review of the SMU program statement revealed that SMU placement was not mandated by BOP policy but was at the discretion of prison officials. *Brown v. Fed. Bureau of Prisons*, No. 11-CV-03191-WYD-BNB, 2014 WL 321214, at *1–2 (D. Colo. Jan. 29, 2014).  In *Saleh* the court found the discretionary function exception applied to an inmate's placement in a transitional unit as part of ADX Florence's "Step-Down" program. *Saleh v. United States*, No. 09-CV-02563-PAB-KLM, 2011 WL 2682728, at *2 (D. Colo. July 8, 2011).  The court noted that admission to the program and unit were not mandatory but determined by eligibility, required approval by a committee, and considered an inmate's readiness to move to a less restrictive environment.  *Id.*

24

Finally, in *Threadgill* an inmate sued the BOP in negligence for placing him in a prison that was known to be hostile to sex offenders and in which plaintiff was assaulted.  *Threadgill v. United States*, No. 11-CV-00094-REB-KMT, 2011 WL 7429424, at *1 (D. Colo. Dec. 1, 2011), *report and recommendation adopted*, No. 11-CV-00094-REB-KMT, 2012 WL 638793 (D. Colo. Feb. 28, 2012).  The exception applied because the statute plaintiff cited (18 U.S.C. § 4801) granted prison officials substantial discretion to weigh various placement factors.  *Id.* at *4.

The cases defendant cites from this court are persuasive but not dispositive.  None of them involve a plaintiff contending that the BOP violated an express policy against placing seriously mentally ill inmates at a particular institution.  Plaintiff alleges violation of a policy that is more constraining than the policies or statutes at issue in these cases.

Defendant next cites to decisions from other circuit courts of appeals.  Two cases defendant relies on, *Cohen* and *Muick*, rest on the discretionary nature of federal statutes setting out BOP obligations.  In *Cohen* the Eleventh Circuit also found that BOP decisions involving placement of prisoners in specific institutions fell under the discretionary function exception. *Cohen v. United States*, 151 F.3d 1338, 1341–42 (11th Cir. 1998).  According to that circuit, 18 U.S.C. § 4042—which requires BOP to provide for prisoner care, safekeeping, and protection— does not impose a non-discretionary duty of care.  *Id.*  In *Muick* the Eighth Circuit held that an inmate's FTCA claim arising from his placement in a specific housing unit and subsequent prisoner-on-prisoner attack was barred by the exception because he "based the claim on staffing, classification and placement of inmates, and responses to inmate fights."  *Muick v. Reno*, 83 F. App'x 851, 853 (8th Cir. 2003) (citations omitted).  By contrast, here plaintiff's allegations appear to rest on a BOP policy regarding the placement of inmates with mental illness, not the

broader language of BOP statutes.  ECF No. 64 at 3.

The other two circuit cases, *Morales* and *Enlow*, are similarly distinguishable on the facts.  In *Morales* the Fifth Circuit held that the discretionary function exception applied to an inmate's transfer to a new Federal Correction Institute and placement in general population with other prisoners from whom he was at risk of attack.  *Morales v. United States*, 371 F. App'x 528 (5th Cir. 2010).  The court reasoned that Morales had failed to produce evidence of a "a mandatory policy precluding placement discretion."  *Id.* at 533.  In *Enlow* the Eleventh Circuit affirmed the district court's holding that the discretionary function exception applied to the BOP's decision to transfer an inmate out of special housing without first reviewing his file.  *Enlow v. United States*, 161 F. App'x 837, 839 (11th Cir. 2006).  The court of appeals based its decision on the district court's correctly finding that "the plain language of the internal prison policy does not mandate a review of the prison files."  *Id.* at 840.  Here, by contrast, plaintiff alleges that the BOP violated its own placement policy that specifically relates to mental illness, not based on a review of inmate files or consideration of inmate safety vis-à-vis other prisoners.

Most importantly, in nearly all of these decisions the discretionary function exception was applied at the summary judgment stage, not the motion to dismiss stage.  While the courts in *Threadgill* and *Saleh* applied the exception on a motion to dismiss, the courts in *Brown*, *Cohen*, *Muick*, *Morales*, and *Enlow* only made that call on motions for summary judgment after considering evidence by both parties.  Unlike in *Saleh* and *Threadgill*, it is not as clear here that the policy at issue is discretionary.  Application of the discretionary function exception in plaintiff's case thus necessarily turns on resolution of material factual issues.  Furthermore, the exception does not apply automatically even if all inferences are drawn in plaintiff's favor.  This

is a case in which resolution of the issue involves both jurisdictional and merits issues.  It is best resolved at the summary judgment stage.  *Pringle*, 208 F.3d at 1223.

The Court finds that dismissing plaintiff's placement-related claims under FED. R. CIV. P. 12(b)(1) pursuant to the discretionary function exception would be premature at this stage of litigation.  Defendant's second objection is thus OVERRULED.  Judge Crews had subject matter jurisdiction to reach the issue of timeliness on these claims, as does this Court.  However, as discussed above, the Court has accepted and adopted Judge Crews' recommendation to dismiss these claims as untimely.  These claims are therefore nonetheless DISMISSED.

## ORDER

1. Judge Crews' recommendation, ECF No. 97, is ADOPTED in part.

2. Defendant's objections in ECF No. 100 are OVERRULED.

3. Defendant's motion for partial summary judgment, ECF No. 66, is GRANTED. Plaintiff's claims for negligence and IIED in ECF No. 64 are DISMISSED with prejudice to the extent they are based off allegations reflected in his administrative tort claims 2016-1, 2016-2, 2016-3, and 2016-4 (those allegations are: defendant placing plaintiff at ADX, manipulating his mental health records to continue his ADX placement, and taking him off of suicide watch with razor blades still in his stomach).

4. Defendant's motion to dismiss, ECF No. 65, is GRANTED as to plaintiff's claims for retaliation, punitive damages, injunctive relief, and declaratory judgment.  These claims are DISMISSED without prejudice.

5. Defendant's motion to dismiss, ECF No. 65, is DENIED as to plaintiff's claims for negligence and IIED to the extent they are based off allegations reflected in

administrative tort claim 2018-1 (the "Timely Tort").  Plaintiff's claim for negligence based on alleged discontinuation or failure to provide medications may proceed, pending a filing of a certificate of review.  Plaintiff's claim for IIED based on (1) alleged discontinuation of or failure to provide medications and (2) alleged used of force and isolation on April 14, 2017 may proceed.

6. Plaintiff's motion for additional time to file a certificate of review, ECF No. 69, is GRANTED.  Plaintiff has sixty days from the date of this order to file a proper certificate of review.

7. Plaintiff's motion for a certificate of review, ECF. No. 76, is DENIED.

DATED this 4th day of November, 2020.


BY THE COURT:


_____
R. Brooke Jackson
United States District Judge