IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No 18-cv-00570-RBJ-SKC

ALPHONSO BLAKE, JR.

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

ORDER GRANTING SUMMARY JUDGMENT

The United States moves for a summary judgment dismissing the remaining count, which was brought pursuant to the Federal Tort Claims Act and asserts intentional infliction of emotional distress by employees of the Bureau of Prisons. For the reasons provided in this order, the motion is granted.

BACKGROUND

Alphonso Blake Jr. is an inmate in the United States Penitentiary in Pollock, Louisiana. He was previously housed at the United States Penitentiary Administrative Maximum facility in Florence, Colorado ("ADX"). He alleged in his second amended complaint, ECF No. 64, that he had been diagnosed with borderline personality disorder, unspecified mood disorder, and anxiety disorder, and that he had been prescribed several antipsychotic medications to treat these disorders. However, he contends the BOP intentionally inflicted emotional distress on him when

1

it placed him at the ADX despite policies to the contrary; discontinued his medications; took him off suicide watch; and subjected him to "use of force" and harmful disciplinary procedures. He also contended that the BOP retaliated against him for exercising his First Amendment rights through the prison grievance system and the courts.

I dismissed some of the plaintiff's claims and struck portions of his prayer for relief in an order issued on November 4, 2020. ECF No. 108. However, I denied defendant's motion to dismiss plaintiff's intentional infliction of emotion distress claim insofar as it was based upon (1) the BOP's alleged discontinuation of, or failure to provide, Mr. Blake's antipsychotic medications and (2) the alleged use of force and isolation o April 14, 2017. *Id.* at 28.[1]

On September 2, 2021 defendant filed a letter of intent to file a motion for summary judgment, consistent with this Court's practice standards. Plaintiff did not respond. On September 14, 2021 the Court by minute order informed the parties that defendant's letter raised legal issues that arguably could be susceptible of summary disposition such that the Court did not object to defendant's filing a motion for summary judgment. ECF No. 202. On September 15, 2021 plaintiff asked the Court to "pause" the case due to a COVID-related lockdown at USP-Pollock. ECF No. 203. I declined to pause or stay the case and noted that it had already granted multiple extensions to the plaintiff in this case, and that it is set for trial beginning November 15, 2021. ECF No. 206. The Court noted that the defendant had indicated its intent to file its motion for summary judgment on September 23, 2021, and that if it did so, plaintiff's response would be due on October 18, 2021. *Id.*

---

[1] I also denied defendant's motion to dismiss plaintiff's medical negligence claim and provided plaintiff an additional 60 days to file a proper certificate of review. *Id.* at 28. However, no certificate of review was filed, and that claim was dismissed without prejudice on January 26, 2021. ECF No. 126.

On September 23, 2021 defendant did file the pending motion for summary judgment on the remaining claims. ECF No. 208. Plaintiff promptly filed a motion for an extension of time to respond to defendant's letter of intent. ECF No. 214. The Court denied that motion, noting that the time to file a response to the letter of intent had passed three weeks earlier, and that the defendant had filed its motion for summary judgment with the Court's permission. ECF No. 215. Nevertheless, the Court sua sponte extended the deadline for plaintiff's response from October 18, 2021 to October 24, 2021, for defendant's reply to November 1, 2021. The Court warned the plaintiff that if he did not file a response the Court would address the motion without a response. *Id.*

On September 29, 2021 the defendant moved to continue or vacate the upcoming trial date and pretrial deadlines. ECF No. 217. The Court requested a prompt response from the plaintiff, ECF No. 218. On October 12, 2021 plaintiff filed an opposition to defendant's motion to continue or vacate. ECF No. 220. The Court vacated the October 29, 2021 trial preparation conference but denied defendant's motion to vacate the November 15, 2021 trial date. ECF No. 221. The Court reiterated, however, that it would rule on defendant's motion for summary judgment after October 24, 2021, if plaintiff did not file a response, or after November 1, 2021, if plaintiff's responded and defendant replied. *Id.* Plaintiff has not filed a response to the motion for summary judgment to this date, and I now proceed to address it.

## STANDARD OF REVIEW

### A. <u>Motion for summary judgment</u>

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The

3

moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### B. Pro se litigants

When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id*. Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

## FINDINGS AND CONCLUSIONS

### A. Discontinuation of Medications.

Defendant points out that the Court previously limited this portion of his intentional infliction of emotional distress claim to the year 2017. However, plaintiff has not come forward with any evidence that any of his medications were discontinued (or that he was denied medications that were prescribed for him) in 2017. The Court previously dismissed his denial of medication claims arising from 2015 and 2016, which are the years on which plaintiff focuses. *See* ECF Nos. 208-1 (plaintiff's interrogatory answers, April 1, 2021), at 2; 208-2 (plaintiff's interrogatory answers, May 24, 2021, at 1-2; and 208-3 (plaintiff's interrogatory answer, August 19, 2021, at 2-5). Therefore, there is no genuine dispute of material fact that requires a trial of this claim.

B.  **Use of Force**.

1.  **Defendant's Evidence**.

The defendant puts forward the Declarations of Jason Dodge, Neal Kimble, and Adam Sapp.

a.  Jason Dodge. He is the Assistant Warden Captain and Chief of Correctional Services the BOP's facilities known as the Federal Correctional Complex ("FCC") in Florence, Colorado. FCC Florence includes the ADX. He has had that position since November 2020, but he has been employed by the BOP since 1997. He was not present at ADX on April 14, 2017, but he has reviewed official records, including videos and documentation, that were created as part of the use of force incident that took place that day.

Based on that information, Assistant Warden Dodge states that at approximately 2:30 p.m., Mr. Blake began throwing chunks of concrete broken off the corner of his bed at his outer cell door window. *Id.* at 4. Mr. Blake, who had a history of defeating restraints and destroying

5

BOP properly, refused orders to desist. A use of force team comprised of seven members overseen by a Lieutenant was mobilized because Mr. Blake had broken the double-paned glass of window. One of the team members, Dr. Neal Kimble, attempted unsuccessfully to communicate with Mr. Blake to avoid confrontation. The Lieutenant then ordered Mr. Blake to submit to hand restraints, which he refused. The team deployed rounds of oleoresin capsicum (pepper spray), but Mr. Blake still refused to comply with hand restraints. After a second deployment of oleoresin capsicum, he did comply with hand restraints. *Id.* at 4-5. Mr. Blake was then placed in handcuffs and leg restraints, decontaminated with soap and water, given fresh clothing, and given a medical examination. He stated that he had injured his head, but medical personnel (and the video of the incident) saw nothing abnormal. *Id.* at 6.

    Assistant Warden Dodge states that BOP staff are authorized to use force as a last alternative after all other reasonable efforts to resolve a situation have failed, limited to the amount of force necessary to gain control of the inmate while protecting the safety of inmates and staff, preventing serious property damage, and ensuring institution security. *Id.* at 7. Staff necessarily exercise discretion and judgment in such situations, which he refers to as calculated uses of force. Several layers of BOP staff have designated roles in deciding whether a calculated use of force is approved, from the initial correctional officer to the Lieutenant on duty. *Id.* at 7-9. Based on his review of the videos and documentation, Assistant Warden Dodge states that the use of force that day was appropriate and in accordance with BOP policy and standard practices. *Id.* at 9-15.

    b. Neal Kimble. Dr. Kimble is the Chief Psychologist at FCC Florence. He was the Advanced Care Psychologist, primarily assigned to the ADX, in April 2017. Dr. Kimble states

that he had received a note from Mr. Blake on April 12, 2017, indicating that he wanted to work on things related to his mental illnesses. ECF No. 208-18 at 3. He considered this to be a non-urgent request, to which responses are required within 10 days, although ordinarily they are processed within three days. On April 14, 2017, before he followed up on Mr. Blake's note, a unit officer called him to report that Mr. Blake was threatening to break components of his cell if Psychology didn't immediately respond to his request for services. Although ADX psychologists usually do not respond when inmates threaten to destroy property because it can incentivize disruptive conduct, Dr. Kimble thought he might be able to deescalate the situation. *Id.* at 3-4. He went to the cell, saw that Mr. Blake was throwing pieces of broken-off concrete at his cell door window, and tried unsuccessfully to persuade Mr. Blake to speak with him. *Id.* at 4.

Shortly thereafter a use of force team was assembled, and Dr. Kimble served as the confrontation avoidance team member. Mr. Blake refused to have a meaningful dialog with hm to address his concerns, refused to submit to hand restraints, and continued to destroy property in his cell. Nevertheless, Dr. Kimble remained present during the entire "calculated use of force" that followed. He states that he has witnessed approximately 20 calculated uses of force at various facilities, and he does not recall anything unusual or noteworthy about this one. *Id.* at 5.

Dr. Kimble conducted a thirty-day mental health review of Mr. Blake on April 20, 2017. He states that Mr. Blake's functioning has remained unchanged since his previous review which had occurred before the April 14 incident. He would have noted any decline in mental health functioning had he perceived it. Finally, Dr. Kimble states that he is not aware of any BOP program or agreement that would have proscribed BOP officials from employing the calculated use of force procedure on April 14, 2017. *Id.* at 6-7.

c. Adam Sapp. Captain Sapp is the Chief of Correctional Services at FCI Englewood. Previously, from June 2016 to October 2019, he was a Lieutenant at FCC Florence. He states that the information in his Declaration is based on his personal knowledge and information made known to him from official records. ECF No. 208-4 at 1-2.

Captain Sapp states that at about 5:15 p.m. on April 14, 2017, following the calculated use of force (and the medical examination), Mr. Blake was transported to Range 13 in C Unit. C Unit is one of seven units at ADX and is generally used to house the most dangerous and disruptive inmates. Range 13 in C Unit is used for inmates who have demonstrated the need for an increased level of individualized control. *Id.* at 4. Mr. Blake was initially placed in Cell 40 which is the only fully "hardened" cell in the ADX. Unlike other cells that have concrete walls, beds, stools, desks, and shelves, Cell 40 has steel plate walls and ceiling, a steel bed, a steel-re-bar reinforced stool and desk, and steel shelf, which are much more difficult to destroy. He remained in that cell until approximately 2:00 p.m. on April 18, 2017 when he was moved off Range 13 and placed in Cell 106, still within C Unit. *Id.* at 4-6.

Captain Sapp notes that Mr. Blake claims to have suffered from emotional distress caused by his placement in Range 13. However, the decision to place an inmate on Range 13 is a housing classification that falls within the judgment of the Warden and is based on a particular inmates need for the control provided in that unit. Based on his review of the videos and documentation of the April 14, 2017 incident, Captain Sapp states that staff acted appropriately and consistently with BOP practice in placing Mr. Blake on Range 13 between April 14 and 18, 2017. *Id.* at 9-10. The placement was based on Mr. Blake's conduct leading up to and during the calculated use of force which required the additional control measures provided there, his

8

disciplinary history, and the timing of his disruptive conduct (right before transition to the facility's reduced weekend staffing) in C Unit. *Id.* at 10-12. According to Captain Sapp, destruction of the concrete components of a cell is a common precursor to an inmate's placement in Cell 40 on Range 13 for a period of time. *Id.* at 12.

d. Dispute of Fact? A party asserting that a fact is genuinely disputed must support that assertion by citing particular parts of materials in the record or by showing that the materials cited by the opposing party do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). If a party fails to properly support his assertion of fact or fails to properly address the opposing party's assertion of fact, the Court may grant summary judgment if the motion and supporting materials show that the moving party is entitled to it. *Id.* at Rule 56(e)(3). As indicated, plaintiff did not respond to the motion for summary judgment. While the Court must construe Mr. Blake's pleadings liberally, he must follow the rules of procedure like other litigants.

2. Applicable Law.

The Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., is "a limited waiver of the federal government's sovereign immunity from private suit." *Estate of Trentadue ex rel. Aguilar v. U.S.,* 397 F.3d 840, 852 (10th Cir. 2005). The waiver is limited by exceptions listed at 28 U.S.C. § 2680. One exception excludes from the waiver actions that are discretionary in nature and require an exercise in judgment that involve policy considerations. *See* 28 U.S.C. § 2680(a). The United States argues that the BOP's calculated use of force involving Mr. Blake on April 14, 2017 fits within that exception. I agree. Mobilizing a team and implementing the calculated use of force policy was discretionary, i.e., it was "'a matter of judgment or choice.'", that is, an

exercise of judgment. *Garcia v. U.S. Air Force,* 533 F.3d 1170, 1176 (10th Cir. 2008) (quoting *Berkovitz v. United States,* 486 U.S. 531, 535 (1988). The exercise of judgment was based on considerations of public policy. It implemented a pre-determined BOP method of responding to an inmate's destructive behavior by mobilizing a response team including a confrontation avoidance member, attempting to deescalate the situation verbally, and failing that, applying measured force designed to control the behavior in a manner that considers the safety of the staff and the inmate. The evidence is that the policy was employed appropriately and in a manner typical of other situations in which it has been used. The evidence also is that the staff's actions achieved the objective of diffusing the situation without causing any serious injury to Mr. Blake or staff personnel.

But even if the exception did not apply, I conclude that Mr. Blake has not satisfied the very high bar that applies to the tort of intentional infliction of emotional distress, sometimes also called "outrageous conduct." Such conduct "goes 'beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" *Riske v. King Soopers,* 366 F.3d 1085, 1089 (10th Cir. 2004) (quoting *Rugg v. McCarty,* 476 P.2d 753, 756 (Colo. 1970)). It would be a case "'in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous'!'" *Rugg,* 476 P.2d at 756 (quoting the Restatement (Second) of Torts § 46, Comment d at 73).

"If, after viewing the evidence in the light most favorable to the plaintiff, the court determines that no reasonable person could conclude that the defendant's conduct was outrageous, summary judgment is appropriate." *Bauer v. Sw. Denver Mental Health Ctr., Inc.,*

701 P.2d 114, 118 (Colo. App. 1982). Having done that, the Court concludes that this is not case of intentional infliction of emotional distress or outrageous conduct – not even close.

## ORDER

Defendant's motion for summary judgment, ECF No. 208, is GRANTED. The trial set for November 15, 2021 is vacated, and this case is dismissed with prejudice, with the exception of the medical negligence claim that was dismissed without prejudice due to plaintiff's failure to file a certificate of review. As the prevailing party defendant is awarded its costs, to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 4th day of November, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge